This is looking like aأ€€.   Okay, our next case this morning is number 16-1691, Onopsis LLC versus AT&T Mobility, Mr. Chappell. Thank you, Your Honor. May it please the court. This case presents a situation where the claim construction, the district court read in limitations that are perceived from the specification and prosecution history into the claim. And in specific, I'm talking about the construction of pre-authorized, which the court construed as having a code specific to a mobile device that permits a request for that device's location to be made. If we think the district court got that right, I mean, I know there's a lot of back and forth, a lot of issues in the briefs, but if we think the district court got that right, then where does that take us down the line with respect to the other issues? That takes us to, in either case, we go to invalidity, where we don't believe that there's clear and convincing evidence of invalidity, and it takes us to the preclusion order, where there was a combination that was precluded that would, I believe, satisfy the district court's current claim construction. Okay. I didn't mean to cut you off. I just was asking how these all play together. So I think the two overarching issues are claim construction and invalidity, and if Onopsis loses on claim construction, then it goes to the preclusion order. There's part of the preclusion order I should mention, though, is continuously tracking that we believe should be addressed in any case. In your reply brief, you say that nothing in the specification says the special code must be unique for each mobile device. What would be a special code that isn't unique? A code that identifies the source of the request as an approved source. So all such-and-such type of phones? That would be an example. All phones and devices I have, and I think I'm kind of jumping around here, but it relates to the argument that I would make about PIN. I have a question about that, yeah. I don't think PIN is a code. So I don't think PIN should be read into the claims. I don't think that's the distinction that the inventor was making. But if it were, what a PIN does is it identifies the person seeking information. So I have a PIN for my bank account, I have a PIN for my alarm system, I have a PIN for my iPad, and they probably shouldn't all be the same PIN, but they are. And in that case, they're identifying me as the person who's seeking the information. Yes, you probably shouldn't say that at all. I do suppose this is public, so I'll have to change that. But isn't that what the trial court found, is that in order to be pre-authorized, there has to be a code that relates to the seeker of the information? No, I think the trial court, by this language specific to a mobile device, said there has to be a code that relates to the device from which the information is being sought. So in other words, there would need to be a code for my bank account, there would need to be a code for my home alarm system, there would need to be a code for my iPad. So what's wrong with that? There's a lot of discussion that relates to this in the specification and in the prosecution history, and there seems to be a lot of suggestion that there does have to be a specific code. I think there are three reasons, I'll go through them. The first is if you look at pre-authorized across all the claims, not just the ones that were asserted, and we take a look at claim 20. Claim 20 talks about the first resource that provides a pre-authorized service to a mobile device, and then it goes on to refer to a second resource that is pre-authorized to access the first service. So in claim 20, pre-authorized is used in context with access to a service, not access to a mobile device, and I think the court's claim construction specific to a mobile device doesn't make much sense when plugged into claim 20. The second point I'd like to make is with regard to the specification. The district court focused on one section of the specification, and that's the special code section of the specification, but there's another section of the specification with a broader discussion of pre-authorized, and that occurs earlier in column 2, and it says the caller may add specific codes to a paging message to enable the paging network to disclose the global position of the remote receiving unit after the message is transmitted, and the construction ought to take into account that broader description as well, and I did want to point out, because AT&T points to prosecution history of subsequent patents, but at page 800 in the record, there is a discussion of pre-authorized and pointing to two sections in the specification, both the part that the district court looked at and the part that I just read, and my point here is that if you have a description in the specification, one that is narrower and one that is broader, that the claim construction ought to encompass both, and I don't believe that the district court's claim construction does that. And I guess finally, I will talk a little bit more about the prosecution history where the word PIN was introduced, and there were two pieces of prior art, one was the Lemelson patent and one was the Singer patent, and they both used a PIN as a permission to access location of a mobile device, and in distinguishing the invention over those two, it's correct that the inventor referred to PIN as part of the pre-authorization, but then he went on to say the PIN is not enough, that you need the second check, so the real point in distinguishing the prior art there was that there were two checks of permission before you got to pre-authorize, that's not something we're running away from, that's something we embrace. The concept of a PIN in the prosecution history really came out of the prior art, essentially the inventor said even if you have a PIN that gives you pre-authorization, that's not enough, we have the second check. So I think if you look at the real substance rather than the superficial, the inventor used the name, the word invention and used the word PIN, but if you look at the substance of what he's saying is the distinction between the prior art and the invention, it's the two checks. Even if it's pre-authorized, you still have the second check. But the second check is in the accept or deny limitation, is that right? That's right. The key here is that, and what the inventor foresaw, is that you might have multiple application sources, people that want to get the location of your mobile phone, and you might want to have that mobile phone give the location to some sources and not others, and in the prior art what you did if you didn't have, if you turned the permission off, you shut off location, so it was available to no one. And you were left with this all or nothing. And what the invention does is it comes up with a system where the location is continually being provided to the system, it can be provided to anyone, but you can then selectively, well, it can be provided to anyone that's pre-authorized, but then you can selectively pick. But does that have to do with whether pre-authorized was properly construed or does that have to do with whether or not the accept or deny limitation is found in the prior art that was relied upon for the invalidity determination? Well, I think it has to do with both. It has to do with the construction because I believe that the district court read a discussion that encompassed both pre-authorization. Well, pre-authorization has nothing to do with the second check, and so the prosecution history in talking about PINs and pre-authorization must be talking about the first one, right? That's correct. If that was the question, I'm sorry, I didn't understand it. The PIN is being used in connection with pre-authorization. That's absolutely correct, but it's not being used to distinguish the invention because PIN comes from the prior art. The concept of the PIN comes from the prior art. Wait, wait. Our cases don't suggest that you can't be bound by prosecution history just because you rely on something that was in the prior art. No, I think the cases suggest that if you distinguish your invention in the prosecution history, you're barred from picking up what you... Well, even in our cases say even if you distinguish it based on a feature that was in the prior art, you're still barred. But I guess my argument is that he's not distinguishing based on a feature in the prior art. He's using the feature in the prior art as part of a discussion as to why it's distinguished. So if we take a look at the discussion of Lemelson. In Lemelson, his argument is these are the things you would need to do to improve the Lemelson reference. And he says the pre-authorization PIN, then you'd have to have this second step where you have a second check. So what he's talking about is changing the prior art before it would meet the invention. I don't think he's using... He's not using PIN to define what the invention is. So how does the invention practice the accept or deny? There is a code that would be checked to see if it's turned on or off for that particular... So a second code. A second code. Or part of the same. It could be part of the same code. You could have a long code to check the first part for pre-authorization. You could check the second part for accept or deny. The specification is silent as to the structure of that code. Well, the district court thought that ParkTap practiced accept or deny. Explain to me why that was the wrong conclusion. Well, I'm not sure I completely understand why the district court thought that it practiced accept or deny, but my understanding... Because it could cut off all access. Right. The ParkTap system looks at the incoming ID and there's a check of a file called TabRC to see if it's approved. And the district court then cited that same check of the TabRC code for the accept or deny. So you have the same code, not even different parts of it, but the exact same act that ends up being the first and second check. I believe that's why the district court's analysis was incorrect in that regard. Okay. You want to save the rest of your time for rebuttal? Yes, please. Mr. Hawes. Thank you, Your Honor. And may it please the court. While there are a lot of interesting issues with regard to the construction of preauthorized, this court doesn't need to reach them. Because while the plaintiff has asserted error, the plaintiff has not shown this court or even asserted the correct requirements for prejudicial evidence at all. As AT&T established in its brief, there's a separate requirement, the second check that we discussed, for which there's no substantial evidence in the record. As a result... No substantial evidence what? That AT&T practices it? Yes, Your Honor. That AT&T practices the second check. All of the evidence in the record, as pointed out in our brief, not only from AT&T witnesses, but also from third-party witnesses who actually build the equipment used in the network, was that the only feature they pointed to was never implemented in the AT&T network. So it's there, but you're just saying nobody implemented it? No, Your Honor. It's not there. When the network is put together... Well, that's not the way I read your brief. I read your brief to say, well, even our customers haven't bothered to implement it. But the implication is that it's there. Well, the third-party, that's the third-party testimony, Your Honor. So when they say their customers, they're talking about AT&T. So when they put the system together, they either include that feature or they don't. And so the third-party was saying, none of our customers have asked us to include that feature. It's never been implemented. And I would point out also, Your Honor, that the jury instructions in this case only go to use of the system as the infringement case, and that's not challenged on appeal. So it's not a question of making a system that might be capable. It's a question of using a system with that feature. And the evidence is... What about as it relates to validity? I mean, you're saying that AT&T never practiced that feature, but I don't see that feature being practiced in the prior art either. Which prior art, Your Honor? So we have two different pieces of... I know, but the judge relied primarily on ParkTab, which I think maybe that was a reverse of what she should have done, but she did. Well, Your Honor, we're looking at the judgment, not the opinion, and we have a jury verdict of invalidity for three of four claims, not all four. Yeah, with nobody who is somebody who is ordinarily skilled in the art having testified. Actually, Your Honor, I'd have to disagree with that. While there certainly was no one with an invalidity expert hat on, there were numerous witnesses who testified who had ordinary skill in the art. Well, they were extraordinary skill in the art, were they not? You had other inventors testify. That's not ordinary skill in the art. Well, in terms of how skill in the art was defined in the evidence of this case, it actually is, Your Honor, in the sense of, for example, Mr. Follidaire is not a doctorate. He has a bachelor's and years of experience, which is what the skill in the art was defined as. But he never read his product onto the claims. No, Your Honor, he discussed for the jury what was in his product in ordinary terms and how it worked. Okay, so where in his product does it practice accept or deny with a secondary check? So, Your Honor, in terms of accept or deny with a secondary check, in the joint appendix at page 46, 754, and that's in column 3, lines 36 to 38, the Follidaire patent specifically says... Which volume is that in? I'm sorry, Your Honor. That, I believe, is... I think it's the fourth volume of unlawful check. That one splits in there. Volume 3. No. I believe it's actually volume 5. No, it's 5. 46, 754. No, it's volume 4. Those two split right there in the 46,000s, which makes it... It's 5. No, no. Alright. So, if you turn to column 3 of the patent, and if you'll look at lines 36 to 38, and this is kind of a sum up, but it gives you the critical piece. You'll see that based on the ANI and or CED. Do you see that point, Your Honor? Yes. So, that's critical because these are different embodiments, and we don't disagree that there's an embodiment with one check, but the AND there is an embodiment with two checks, because it does allow to check two different things before it provides the location information. ANI is the automatic number identification, so that's checking where someone is calling from. So, for example, if I don't want someone to call from, I don't know, Houston, then I'm going to block ANIs that have a 713 at the beginning. The CED is the customer interdigits. That's the PIN, Your Honor. So, that's the idea of checking if that person has your particular code. So, I can both check who that person is and whether they have my particular code. That's why there are two checks. This is, at minimum, substantial evidence, which, of course, is all we need for the jury verdict to be upheld. And, of course, these jury verdicts do not have different verdicts from Follett Air or Dr. Watt's ParkTab system. So, if you find this is substantial evidence, that's enough to uphold the verdicts of invalidity. So, this and what testimony from the inventor? Okay. So, the inventor testimony, Your Honor, is at JA43-854. And it runs through 858. And so, he discusses that, he talks about the ANI. You'll see that on what is page 47 of the testimony, but it's page 43-875 of the appendix. And if you look at lines 18 through 20, you'll see he discusses the use of the ANI as a check. And then, up above that... Wait, 43-854? 43-875. Oh, 75. Sorry. Okay. So, 43-875. And if you'll look, Your Honor, at lines 18 through 20, you'll see he's discussing the use of ANI as a check. Do you see that, Your Honor? Up above on the page, he talks about the first check. And this is lines 1 through 9, where he tells the jury, in ordinary person terms, what the 8-digit CID is. It's a PIN. It's a personal identification number. So, he testified, explaining to the jury how the ANI and the CED made up the two checks used by his system. So, the second check is just the number of the person who dialed? Well, you check that against numbers that are allowed to be used for location information. But, yes, you're right. That's the data that's being checked. Why didn't you put on your validity expert? Your Honor, we felt we had, and the jury backed us up on this, we felt we had a great non-infringement case. And, you know, the jury came our way on non-infringement. We didn't feel we needed to put on our invalidity expert. And we had already also put on no less than three witnesses who testified to what these... Your Honor, you must have been pretty surprised then when the jury sided with you on validity. Your Honor, we put on live witnesses describing the prior art to the jury in the terms that the jury had already heard experts. Dr. Wicker and the plaintiff's Dr. Rose have described what the claims required in real person terms. The jury took that together with the testimony of the prior art witnesses and was able, because they had not just a jury saying, we're going to rule for AT&T on everything. This jury deliberated for two days and they found three of the claims invalid, but the fourth claim they did not find invalid. So this is not, you know, an unsophisticated situation. It's a situation that really shows us why this Court has a very good rule of no bright line test for invalidity expert. You look whether there's substantial evidence. And you look at the record as a whole. The appellant has never, in any of its briefs, looked at the record as a whole and told you why there isn't substantial evidence. And that's the test, not a bright line test of is there a person with an invalidity expert hat. That's not the test that this Court uses. And this jury's nuanced decision illustrates why the test you do use is the right test. Any other questions on invalidity? I would like to get to the prejudicial error point, because I think it's a fairly interesting point, given that we have an appellant who comes up and says, oh, preauthorized. Court got it wrong. And then in the reply brief, they actually admit that all of their complaints about the motion to strike and the evidence being excluded, also related to preauthorized. And if Your Honor, if you can look, if you have their reply brief. So their position is that, yes, you may need the code of the mobile device for preauthorization, but just like we talked about, you need a second preauthorization piece in order to be able to do both, right? Well, so the preauthorization is the first check. The preauthorization is the first check. The second check has to just be a second check. And what I'm saying is... But you just conceded that that second check has to be based on something that's already listed in the group of numbers, right? The claim just says you have to be able to accept or deny. Our example of that in the Folliday reference is a comparison of numbers. But the claim says you accept or deny, even though the person is preauthorized. That's that second check. But the claim doesn't say exactly what you're checking. It just says you have to have the ability to accept or deny, even though they are preauthorized. And the problem, and the reason there's no prejudicial error here, even if there were error, the problem is, at trial, they never put on any adequate substantial or evidence otherwise that AT&T does an accept or deny of preauthorized, even under their theory, of preauthorized individuals. That's why this court does not need to reach the construction of preauthorized because the jury's decision couldn't be changed, even if preauthorized was brought up. And I point the court to the SSL Services versus Citrix Systems case, which is 769, Fed 3rd, 1073. And there's a good quote that's right on point here on page 1084, which is, even if the district court erred in its construction, and talks about what the construction is, the result the jury reached would not change. And that court went on to not consider that construction at all, because there was no need to do so. And that's the situation here. There's no need to consider the preauthorized construction. AT&T showed in its brief that Anopsis did not show a second check, and Anopsis, in their reply, doesn't deny that there wasn't substantial evidence. They say, well, AT&T said preauthorized was really important, so it must be prejudicial. But that confuses necessary and sufficient. Of course, each element of a claim is important, because each element is necessary. What's your response to their argument that, well, this isn't really a fair comparison, because if preauthorized had been appropriately construed, the whole case would have been presented differently? I mean, Your Honor, that's not... First of all, that's always the case. And clearly, there are situations where claim construction is not prejudicial error. I mean, the point is, when you go to trial, if you disagree with construction of one element, that doesn't absolve you of your responsibilities to put on evidence for the other elements. And that's what we're saying they failed to do here. They didn't like the construction of preauthorized. We all know that. But that doesn't mean that they get to go to trial, put on insufficient evidence as to the second check, and then come here and say, we want a whole new trial. That's not how it works under SSL Services. Under SSL Services, you need to show that based on what you did at trial, that there would have been an impact on the jury decision. And given that there was no substantial evidence on an element of the claims at issue here, that means you can't have any prejudice, even if the court misconstrued preauthorized. But now, I would like to hit some of the points made by appellant with regard to preauthorized construction. First of all, the appellant pointed out Claim 20 and made a new argument about whether Claim 20 makes a difference. And they said, well, that shows... which is broader than location. And it's true that Claim 20 uses the word service. But really, Claim 20 was just using a broader term. And so perhaps it's true that you could be preauthorized under Claim 20 to do something other than seek the location of the cell phone. Maybe you're preauthorized to make the cell phone create some really loud noise. Maybe you're preauthorized to make the cell phone light up. But that doesn't change the scope of preauthorized, especially when this inventor told the public what the invention was. If you look at the appendix on page 880, the appellant, the applicant said, and it's in the middle of that second paragraph there, said, in applicant's invention, even after the system verifies a PIN to provide location information, the remote unit still determines when a preauthorized unit should get location and when it shouldn't. They're not talking about the prior one. The public has the right to rely on prosecution history that says, in applicant's invention. But that's a description of applicant's invention. And there's no question that it verifies a PIN to provide location information. Keep in mind that preauthorized was not in the original claims. And this court has held, for example, in the Texas, University of Texas v. Ben Q case, that when new terms are introduced to the claim that don't have specific specification, you look to the prosecution history to see what they mean. Okay. Thank you, Mr. Hose. I think we're out of time. I would like to start with the prejudicial error argument. And just explain. Did you introduce evidence that AT&T's product practiced the second check? Yes, we did. Okay. And AT&T introduced evidence that that was not present. Where's the evidence that you introduced? I don't have that at hand right now, Your Honor. But the point I want to make... What was it? It's not very convincing to say that you don't have it at hand. You're supposed to come and know your case enough to be able to answer the question. I do, but I don't think... I mean, I realize that. But the point here is that we intended to present a case at different levels of their system. The gate laid to the AT&T system and the supple severed to the AT&T system. And the handsets and the district court's preauthorization and subsequent claim, subsequent summer judgment precluded us from offering evidence at the gateway. And the evidence that we believe was particularly prejudicial. I mean, the prejudicial error came from excluding under that construction. But if the jury was compelled to find against you on the second issue, that is the second check, then it is harmless error. No, because the evidence as to what that second check would have been at the gateway. I don't understand what you're saying. The AT&T system has numerous checks. The first check is when a request is made for location at the gateway to the network by a third party. At that gateway, there's a check to see if that requester is authorized. And then there's a check to see if that requester is authorized for that specific mobile device. And that was our primary theory as to what preauthorized and the second check were. That entire theory was precluded by the summary judgment in the district court. So the evidence of that first check and the second check was never presented. So in order for you to win, we'd have to agree with you that district court made an error in precluding that theory. Yes, and the reason that it made an error in precluding that theory is because the claim construction was incorrect. The claim construction of preauthorized resulted in the preclusion. Putting aside the claim construction, couldn't you have argued to the district court that she shouldn't preclude it because what she's effectively doing is precluding you showing that second check? Regardless of what preauthorized meant as it relates to the first check? I think there were issues in the way the district court granted summary judgment as a preclusion order rather than as a findings of fact. But the order which was enforced throughout the trial was that no evidence at the gateway was admissible. So we were Okay. Thank you, Mr. Chairman. Thank both counsel. The case is submitted.